UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STUDIO 010 INC. dba EQUADOSE,<br><br>Plaintiff,<br><br>v.<br><br>DIGITAL CASHFLOW LLC, et al.,<br><br>Defendants. | CASE NO. C20-1018-DGE<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Studio 010 Inc. dba Equadose ("Equadose") brings this civil action against defendants Digital Cashflow LLC, Christopher Ackerman, and End Racism LLC, seeking declaratory and injunctive relief and damages based on defendants' intentionally inaccurate representations to Amazon.com that accused Equadose of selling an earwax cleaning device that infringed United States Patent No. 10,525,191 (the "'191 patent") and resulted in plaintiff's inability to sell the product on Amazon.com for a period of time. Dkt. 57 (Amended Complaint).[1] *Pro se* defendant Mr. Ackerman alleges that under Fed. R. Civ. P. 12(b)(1) there is

---

[1] On March 30, 2021, the Court granted the motions to withdraw as counsel filed by the attorneys for Digital Cashflow. Dkt. 55. The Court noted defendants' understanding that a business entity like Digital Cashflow must be represented by counsel under Local Rule 83.2 and ordered that, once Digital Cashflow had retained counsel, it should file an answer to the Amended Complaint no later than May 4, 2021. *Id.* at 1–3. No counsel has appeared for Digital Cashflow and Digital Cashflow has to date not filed an answer. Default judgment should therefore be entered against Digital Cashflow.

REPORT AND RECOMMENDATION - 1

no subject matter jurisdiction because the corporate veil may not be pierced to hold him personally liable for the actions of his company Digital Cashflow, and that under Fed. R. Civ. P. 12(b)(6) plaintiff has stated no plausible grounds for relief. Dkt. 60, at 1–3. Defendant End Racism contends that under Fed. R. Civ. P. 12(b)(1) plaintiff lacks standing to proceed on declaratory judgment claims of patent invalidity (Claim 1) and non-infringement (Claim 2) with respect to End Racism because the company eliminated any case or controversy by purchasing the '191 patent from the other defendants and promising not to sue Equadose for infringement. Dkt. 66, at 2; *see* Dkt. 64. The Court recommends **GRANTING in-part** (Claim 7 Lanham Act) **and DENYING in-part** (all other challenged claims) Mr. Ackerman's motion to dismiss, **Dkt. 60**; **DENYING** End Racism's motions to dismiss, **Dkt. 66**; and directing Equadose, Mr. Ackerman, and End Racism to submit an updated joint status report. **DEFAULT JUDGMENT** should be entered against Digital Cashflow, which has not retained counsel and has not filed an answer 11 months past the deadline to do so. *See* Dkt. 55, at 2–3.

## BACKGROUND

Equadose alleges that defendants Mr. Ackerman and Digital Cashflow knowingly sent a report of baseless intellectual property violations to Amazon.com with the intent and result of causing Amazon.com to delist Equadose's earwax removal product. Dkt. 57, at 1–2. Equadose alleges that Mr. Ackerman and Digital Cashflow falsely told Amazon.com that the Equadose product infringed the '191 patent, which at that time was owned by Mr. Ackerman, was subsequently assigned to Digital Cashflow after this lawsuit was filed, and was later assigned to defendant End Racism along with the assets of Digital Cashflow, including U.S. Trademark Registration Serial Number 5,562,221 for HEAR CLARLY (the "'221 registration"), and the associated line of business, goodwill, and other assets. *Id.* According to Equadose, its earwax

removal products have been sold on Amazon.com since 2017, with its current design on sale since as early as May 2018.[2] *Id.* at 2. Meanwhile, the priority date for the '191 patent is in June 2019. *Id.* Moreover, Equadose alleges that Mr. Ackerman and Digital Cashflow have known of the Equadose products since as early as their trademark dispute in 2018, while defendant End Racism knew about the Equadose products and the evidence in this case since before it acquired Digital Cashflow's assets in December 2020. *Id.* Equadose alleges that End Racism was aware of the inequitable conduct of the other defendants and of the invalidity of the '191 patent. *Id.* at 3. Equadose contends that Mr. Ackerman, Digital Cashflow, and End Racism acted in concert to enforce patent and trademark rights that they knew to be invalid and unenforceable. *Id.*

## DISCUSSION

Plaintiff raises eight claims: (1) declaratory judgment of invalidity of the '191 patent (all defendants); (2) declaratory judgment of non-infringement of the '191 patent (all defendants); (3) tortious interference with existing contract (Mr. Ackerman and Digital Cashflow); (4) commercial disparagement (Mr. Ackerman and Digital Cashflow); (5) deceit and negligent misrepresentation (Mr. Ackerman and Digital Cashflow); (6) unfair competition under Washington's Consumer Protection Act (Mr. Ackerman and Digital Cashflow); (7) unfair competition under the Lanham Act (Mr. Ackerman and Digital Cashflow); and (8) infringement of a registered trademark (all defendants). Mr. Ackerman alleges that he should not be individually liable for any alleged misdeeds because the now-unrepresented company he owns and operates should be solely liable and because Equadose fails to state plausible claims of

---

[2] In the Amended Complaint, Equadose clearly states that its current design has been on sale as early as May 2018. Dkt. 57, at 2. The Court therefore treats as a scrivener's error that plaintiff later refers to selling its current design since May *2019*. Dkt. 57, at 10. Moreover, in a declaration, Equadose's owner referred to the most recent version of the product being sold in May 2018. Dkt. 18, at 5.

REPORT AND RECOMMENDATION - 3

liability, particularly for patent invalidity and non-infringement. Dkt. 60; *see* FED. R. CIV. P. 12(b)(1), (b)(6). End Racism contends that no case or controversy exists with respect to its liability for Claims 1 and 2 because those claims have been mooted by End Racism's representations to the Court that it will not seek to enforce the '191 patent against Equadose.[3] Dkt. 66; *see* Dkt. 64; FED. R. CIV. P. 12(b)(1).

Although defendants Mr. Ackerman and End Racism seek to end this lawsuit without further discovery regarding whether they impeded sales of Equadose's earwax removal devices by use of an allegedly invalid and unenforceable patent, they have failed to demonstrate that plaintiff's Amended Complaint should be dismissed based on Fed. R. Civ. P. 12(b)(1) lack of subject matter jurisdiction or Fed. R. Civ. P. 12(b)(6) failure to state a claim except as to plaintiff's Claim 7 of Lanham Act unfair competition. Accepting as it must all factual allegations as true, the Court finds that plaintiff has stated plausible claims that defendants patented a device without disclosing that Equadose's product might invalidate that patent, improperly sought to block plaintiff from selling the product on Amazon.com by wielding an invalid patent, then attempted to evade legal liability for harm that had already been incurred by transferring the patent and promising not to sue. The Court recommends denying defendants' motions to dismiss except as to Claim 7 (Lanham Act) in Mr. Ackerman's motion. Dkts. 60, 66.

I.  **Standards of Review**

Fed. R. Civ. P. 12(b)(1) allows a party to challenge a federal court's subject matter jurisdiction. As the party invoking subject matter jurisdiction, plaintiff bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief

---

[3] Five days before a scheduled settlement conference, End Racism also provided notice that it was voluntarily surrendering all rights and ownership to the '221 trademark registration. Dkt. 75.

REPORT AND RECOMMENDATION - 4

requested. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually*.*" *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A challenge to subject matter jurisdiction is a factual attack where the moving party relies on extrinsic evidence and does not assert a lack of subject matter jurisdiction solely based on the pleadings. *Safe Air for Everyone*, 373 F.3d at 1039. "In resolving a factual attack on subject matter jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).

In reviewing a Rule 12(b)(6) motion, courts must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, courts are not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and a complaint that fails to do so is subject to dismissal pursuant to Rule 12(b)(6). Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

REPORT AND RECOMMENDATION - 5

elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

In the past, Form 18 of the Appendix of Forms to the Federal Rules of Civil Procedure was titled "Complaint for Patent Infringement" and provided a sample allegation of direct infringement such that compliance with Form 18 effectively immunized a claimant from attack regarding the sufficiency of the pleading. *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1376–77 (Fed. Cir. 2017). Form 18 was, however, abrogated by the Supreme Court effective December 1, 2015. *Id.* at 1377. Thus, to the extent Form 18 set forth a more liberal standard for pleading claims of patent infringement, or non-infringement, that standard no longer controls. Patent claims, like all other claims for relief, must comply with the standard set forth in *Iqbal* and *Twombly*. *See, e.g., Deerpoint Group Inc. v. Vacqua Concepts Inc.*, 2014 WL 7178210, at *4 (E.D. Cal. Dec. 16, 2014) (applying *Iqbal* and *Twombly* to counterclaim of patent invalidity and non-infringement). Thus, with respect to claims of patent non-infringement and patent invalidity, to survive a motion to dismiss after *Iqbal* and *Twombly,* plaintiff Equadose must allege sufficient facts that when taken as true, support a reasonable inference that plaintiff did not sell or offer to sell a product that had no substantial non-infringing use, or support a reasonable inference that the '191 patent is invalid for a number of statutory reasons or is unenforceable due to inequitable conduct. *See, e.g., Tannerite Sports, LLC v. Jerent Enterprises, LLC*, 2016 WL 1737740, at *5–*12 (D. Or. May 2, 2016).

**II.     Mr. Ackerman's Motion to Dismiss**

*Pro se* defendant Mr. Ackerman moves to dismiss because (1) Equadose has raised no claims under Fed. R. Civ. P. 12(b)(1) that require the corporate veil of Digital Cashflow be pierced to render liable the company's owner and operator Mr. Ackerman, and (2) Equadose has raised no plausible claims under Fed. R. Civ. P. 12(b)(6) of patent invalidity, patent non-infringement, or other related claims. Dkt. 60, at 1–3. Mr. Ackerman's motion to dismiss lacks merit except with respect to plaintiff's Claim 7 of Lanham Act unfair competition.

**A.   Subject Matter Jurisdiction and Mr. Ackerman's Liability**

Mr. Ackerman contends that the lawsuit against him should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because he cannot be held personally liable for the actions of Digital Cashflow, the company he owns and solely operates. This contention is frivolous.

Equadose alleges that Mr. Ackerman knowingly, intentionally, and personally participated in tortious conduct, including the registration of an invalid '191 patent, wielding that invalid patent improperly to stop Equadose from selling their earwax removal product, and using the '221 trademark registration of HEAR CLEARLY to infringe upon Equadose's substantially similar trademark of HEAR on an earwax removal product. "Infringement is a tort and officers of a corporation are personally liable for tortious conduct of the corporation if they personally took part in the commission of the tort or specifically directed other officers, agents, or employees of the corporation to commit the tortious act. The cases are legion in which courts have recognized and imposed personal liability on corporate officers for participating in, inducing, and approving acts of patent infringement." *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed. Cir. 1986) (citations omitted). There is no dispute that Mr.

Ackerman registered the '191 patent and reported a violation of that patent by Equadose to Amazon.com, leading Amazon.com to delist Equadose's product, and that Mr. Ackerman personally applied for the '221 HEAR CLEARLY trademark registration. Dkt. 16 (Ackerman Decl.). Mr. Ackerman cannot hide behind the corporate veil to shield himself from personal liability for his own allegedly tortious conduct.

### B.  Plausible Claims of Tortious Conduct

Mr. Ackerman also contends that the lawsuit against him should be dismissed under Fed. R. Civ. P. 12(b)(6) because Equadose has stated no plausible grounds for relief. Except with respect to plaintiff's Lanham Act claim (Claim 7), Mr. Ackerman's contention does not comport with the Court's obligation, at this early stage of proceedings, to accept as true all facts alleged in the Amended Complaint, and to draw all reasonable inferences in favor of Equadose. Equadose has plausibly alleged that the '191 patent is invalid for statutory reasons or is unenforceable due to inequitable conduct, has supported the reasonable inference that its earwax removal product has a substantial non-infringing use, and that Mr. Ackerman has engaged in the tortious misuse of patent and trademark rights to the detriment of Equadose.

With respect to Claim 1 patent invalidity, the patent statute provides that a person is not entitled to a patent if the claimed invention was in public use, on sale, or otherwise available to the public before the effective date of the invention, which in this case is June 12, 2019. *See* 35 U.S.C. § 102(a)(1). Equadose plausibly alleges that the design of the product in-question was on sale as early as May 2018 while the priority date for the '191 patent is June 12, 2019. Dkt. 57, at 2; *see also*, Dkt. 18, at 4. In addition to allegations that plaintiff, Mr. Ackerman, and Digital Cashflow had disputed the earwax cleaning products since 2018, plaintiff has alleged that its design was publicly disclosed as early as March 2018 in a video published on YouTube.com. *See*

Dkt. 57, at 10; https://youtu.be/g2pDpWqWcrw.[4] Meanwhile, Mr. Ackerman states that Equadose's earwax cleaning product infringed the '191 patent, and his own product based on the '191 patent was first offered for sale no earlier than June 2018, i.e., after Equadose was already selling its product. Dkt. 16, at 4, 5. Moreover, "[t]he concept of inequitable conduct in patent procurement derives from the equitable doctrine of unclean hands: that a person who obtains a patent by intentionally misleading the PTO cannot enforce the patent." *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1394 (Fed. Cir. 1988). "Inequitable conduct requires proof by clear and convincing evidence." *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 551 (Fed.Cir.1990). In alleging patent invalidity Equadose must make a threshold showing that (1) the applicant or a person substantially involved in the preparation of the application withheld or misrepresented material information and (2) the applicant or a person substantially involved in the preparation of the application intended to deceive the PTO by withholding or misrepresenting the information. *Halliburton Co. v. Schlumberger Technology Corp.*, 925 F.2d 1435, 1439 (Fed.Cir.1991); *see also* 37 C.F.R. § 1.56. Equadose has met this threshold showing by alleging that Mr. Ackerman claimed to have invented the earwax removal device in the '191 patent without disclosing or indicating his full knowledge that the accused device was already being sold online by Equadose for more than a year before the application date. In fact, Mr.

---

[4] To the extent Mr. Ackerman asserts that he accused only version 3 of Equadose's product (on sale since May 2018) and not the version 2 that was disclosed in the YouTube.com video, *see* Dkt. 60, at 14, that would be a concern had he brought a suit for infringement but not here where Equadose alleges patent invalidity and patent non-infringement based on all versions of its products sold on Amazon since 2017. Dkt. 57 ("Plaintiff's falsely accused products have been sold on Amazon.com since 2017, with its current design on sale since at least as early as May 2018); *see, e.g.*, Dkt. 18, at 4 (Equadose's owner stating, "In the context of this dispute – relating to the '191 Patent claims – my understanding was that the hose connector and disc shape were irrelevant to infringement, so I described the differences between the V2 and V3 versions as 'minor'"); *see also* Dkt. 3-7 (Equadose counsel opining that version 1 on sale since 2017 appeared to be the product most similar to the '191 patent).

REPORT AND RECOMMENDATION - 9

Ackerman admits that he incorrectly informed Equadose that his own "product bearing the HEAR CLEARLY trademark was actively sold 'since April of 2017.'" Dkt. 16, at 3–4. Mr. Ackerman's representation that his product had been actively sold since April 2017 would, of course, have meant he was not entitled to a patent with a June 2019 effective date. *See* 35 U.S.C. § 102(a)(1). Moreover, Mr. Ackerman's revised date of selling his own product "no earlier than June 2018," Dkt. 16, at 4, appears conspicuously crafted to fall into the exception for disclosures made one year or less before the June 2019 filing date of the claimed invention. *See* 35 U.S.C. § 102(b). One might reasonably infer that Mr. Ackerman retracted his statement during the lawsuit because failing to do so would be conceding Equadose's Claim 1 allegation of patent invalidity.

With respect to the Claim 2 patent non-infringement, Equadose plausibly alleges with specificity that its earwax removal product does not infringe the '191 patent because, at very least, its commercial sale on Amazon.com predates the '191 patent by over a year. Mr. Ackerman is clearly on notice of what Equadose product is alleged to be non-infringing and why: it is the very product that Mr. Ackerman accused of infringing his '191 patent that he reported to Amazon.com. Dkt. 15, at 5. Mr. Ackerman himself stated that "my analysis indicated that the current design of Equadose's ear washing product bearing ASIN B075RGFQ13 ('Equadose's current design') infringed the '191 patent." Dkt. 16, at 5. He therefore admits to an issue of fact that must be resolved by a factfinder rather than in a motion to dismiss. Moreover, Equadose included with the original pleadings and incorporated into the Amended Complaint a detailed, claim-by-claim non-infringement analysis of the '191 patent. Dkt. 57, at 3–4; *see* Dkt. 3-7 (Letter from Jared S. Goff to Amazon.com, Inc. dated June 15, 2020). It is frivolous for Mr.


Ackerman admits that he incorrectly informed Equadose that his own "product bearing the HEAR CLEARLY trademark was actively sold 'since April of 2017.'" Dkt. 16, at 3–4. Mr. Ackerman's representation that his product had been actively sold since April 2017 would, of course, have meant he was not entitled to a patent with a June 2019 effective date. *See* 35 U.S.C. § 102(a)(1). Moreover, Mr. Ackerman's revised date of selling his own product "no earlier than June 2018," Dkt. 16, at 4, appears conspicuously crafted to fall into the exception for disclosures made one year or less before the June 2019 filing date of the claimed invention. *See* 35 U.S.C. § 102(b). One might reasonably infer that Mr. Ackerman retracted his statement during the lawsuit because failing to do so would be conceding Equadose's Claim 1 allegation of patent invalidity.

With respect to the Claim 2 patent non-infringement, Equadose plausibly alleges with specificity that its earwax removal product does not infringe the '191 patent because, at very least, its commercial sale on Amazon.com predates the '191 patent by over a year. Mr. Ackerman is clearly on notice of what Equadose product is alleged to be non-infringing and why: it is the very product that Mr. Ackerman accused of infringing his '191 patent that he reported to Amazon.com. Dkt. 15, at 5. Mr. Ackerman himself stated that "my analysis indicated that the current design of Equadose's ear washing product bearing ASIN B075RGFQ13 ('Equadose's current design') infringed the '191 patent." Dkt. 16, at 5. He therefore admits to an issue of fact that must be resolved by a factfinder rather than in a motion to dismiss. Moreover, Equadose included with the original pleadings and incorporated into the Amended Complaint a detailed, claim-by-claim non-infringement analysis of the '191 patent. Dkt. 57, at 3–4; *see* Dkt. 3-7 (Letter from Jared S. Goff to Amazon.com, Inc. dated June 15, 2020). It is frivolous for Mr.

Ackerman to suggest at this stage of the proceedings that Equadose's claim of patent non-infringement fails for lack of plausibility or specificity.

Mr. Ackerman's generalized attacks on Claims 3 through 7 are meritless. Dkt. 60, at 15–22. Mr. Ackerman argues that Claims 3 through 7 should be dismissed because they are based on the insufficiently pleaded Claims 1 and 2. Dkt. 60, at 15– 17. As discussed, this is incorrect. Mr. Ackerman also argues that Equadose's tort claims arising from fraud and unlawful interference are preempted by the Patent Act. Dkt. 60, at 15–16. The Patent Act does not, however, preempt fraud/misrepresentation-based state or federal unfair competition laws, nor state contract and tortious interference laws, as they address conduct beyond mere infringement or noninfringement. *See Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979); *Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1477 (Fed. Cir. 1998). "Tort claims under state law are not preempted by federal patent law where they include additional elements not found in federal patent law claims." *Dow Chemical Co.*, 139 F.3d at 1473. Thus, while Equadose may not predicate state-law or contractual interference claims solely on Mr. Ackerman having obtained his patent through fraud, Equadose may proceed with its claims that involve the wielding of an invalid patent to interfere with its contractual relations with Amazon.com and to unfairly compete by improperly blocking Equadose access to the sole marketplace for its products.

Mr. Ackerman asserts that plaintiff's Claim 6 for a violation of the Washington Consumer Protection Act ("WCPA") should be dismissed as implausible. Dkt. 60, at 17–20; *see* Dkt. 57, at 31. This contention is meritless. The WCPA makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. "To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest,

REPORT AND RECOMMENDATION - 11

1  (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 889 (Wash. 2009). Plaintiff alleges that (1) Mr. Ackerman committed an unfair and deceptive practice by wielding an invalid patent, (2) occurring in commerce via the Amazon.com marketplace, (3) affecting Amazon.com, Amazon.com customers, and other Amazon.com vendors, (4) injury to Equadose through lost sales and reputational damage, (5) causation because Amazon.com erroneously delisted Equadose's products as the result of Mr. Ackerman's false statements. These allegations meet all the elements of a plausible WCPA claim.

Mr. Ackerman contends that plaintiff's Claim 7 for Lanham Act unfair competition should be dismissed because Equadose's allegations do not concern "commercial advertising." Dkt. 60, at 20–22; *see* Dkt. 56, at 31–32. This contention has merit. The Lanham Act proscribes misrepresentation of another's goods or services in "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). Neither the Act's legislative history nor the Act itself defines "advertising" or "promotion." *See Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999); *Seven–Up Co. v. Coca–Cola Co.*, 86 F.3d 1379, 1383 (5th Cir.1996). The Ninth Circuit therefore adopted four criteria for determining whether representations constitute "commercial advertising or promotion":

> [T]hey must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Coastal Abstract Service, Inc.*, 173 F.3d at 735 (quoting *Gordon & Breach Science Publishers v. American Inst. of Physics*, 859 F. Supp. 1521, 1535–36 (S.D.N.Y. 1994)). Here Mr. Ackerman's

REPORT AND RECOMMENDATION - 12

false complaints to Amazon do not constitute commercial speech because the complaints were made directly to Amazon and not to consumers. *See, e.g., Thimes Sols. Inc. v. TP Link USA Corp.*, 2020 WL 6154192, at *2 (C.D. Cal. Aug. 31, 2020) (finding amendment of Lanham Act claim would be futile where "Defendants' complaints were made directly to Amazon—who is not a consumer—and the complaints were not disseminated to the relevant purchasing public (i.e., Amazon users who might purchase Plaintiff's products)."); *Sky Billiards, Inc. v. WolVol, Inc.*, 2016 WL 7479426, at *2 (C.D. Cal. Feb. 22, 2016) (ruling plaintiff did not meet the first element of a Lanham Act false advertising claim where complaint alleged that defendant contacted Amazon and alleged that plaintiff's products violated defendant's intellectual property rights); *see also BLM Prod., Ltd. v. Covves, LLC*, 2017 WL 8811269, at *5 (C.D. Cal. Oct. 26, 2017) (dismissing Lanham Act claim where plaintiff alleged defendant made representations to Amazon.com by filling out an infringement form and noting that "the representation was made only to Amazon, out of view of the general public"). Thus, Equadose's allegations that Mr. Ackerman made false infringement complaints to Amazon are insufficient to support a false advertising claim because these complaints were not "commercial advertising or promotion" within the meaning of the Lanham Act. Equadose's Claim 7 of Lanham Act unfair competition should be dismissed.

Mr. Ackerman also makes a frivolous argument that this Court lacks subject matter jurisdiction over this matter. Dkt. 60, at 22–24. This Court has federal question jurisdiction over the federal claims, which include federal patent and trademark claims. *See* 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the related state-law claims. *See* 28 U.S.C. § 1367. Moreover, Mr. Ackerman cannot evade federal jurisdiction through transferring ownership of the

REPORT AND RECOMMENDATION - 13

disputed patent and trademark to End Racism. Dkt. 60, at 24. He remains liable because he personally committed the alleged torts that resulted in damages.

### III. End Racism's Motion to Dismiss Claims 1 and 2

End Racism argues that Claim 1 of declaratory judgment for patent invalidity and Claim 2 of declaratory judgment for patent non-infringement should be dismissed with respect to End Racism because the company has promised not to assert the '191 patent (and presumably, by extension, the surrendered '221 trademark registration) against Equadose. Dkt. 66; *see* Dkts. 64, 75. This contention is frivolous.

End Racism took ownership of the '191 patent and the '221 registration only during the course of the lawsuit. On August 9, 2021, it gave notice that it would not assert the '191 patent against Equadose. Dkt. 64. On February 11, 2022, End Racism gave notice that it was voluntarily surrendering the '221 registration. Dkt. 75. Although End Racism suggests that taking such actions means that there is no longer a case or controversy, the company has not accounted for the damage that Equadose has already incurred due to the misuse of the purportedly invalid '191 patent and the '221 registration; has not accounted for how Mr. Ackerman's/Digital Cashflow's sale of invalid intellectual property might demonstrate a fraudulent scheme to evade liability for unfair competition; and has not acknowledged that the invalidation of the '191 patent and a finding of non-infringement, if justified, would serve both Equadose's financial and reputational interests as well as the public interest by protecting other wrongly accused vendors, the Amazon.com marketplace, and Amazon.com customers. End Racism remains in this lawsuit because it has been accused of taking control of an invalid patent to assist the other defendants in avoiding liability for tortious, fraudulent acts and because that patent was wielded to cause harm

to Equadose, serves as evidence of allegedly wrongful actions, and retains the potential to cause harm to others.

Equadose's requests for declaratory judgment of patent invalidity and patent non-infringement remain real and substantial and have a high likelihood of admitting to specific relief through a decree of a conclusive character. *See Aetna Life ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240–41 (1937); 28 U.S.C. § 2201 *et seq.* End Racism's Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction should be denied.

## CONCLUSION

The Court recommends **GRANTING in-part** defendant Mr. Ackerman's Fed. R. Civ. P. 12(b)(6) motion to dismiss with respect to plaintiff's **Claim 7** of Lanham Act unfair competition and **DENYING in-part** Mr. Ackerman's Fed. R. Civ. P. 12(b)(1) and 12(b)(6) motion to dismiss with respect to all other issues. **Dkt. 60**. The Court recommends **DENYING** defendant End Racism's Fed. R. Civ. P. 12(b)(1) motion to dismiss. **Dkt. 66**. **DEFAULT JUDGMENT** should be entered against Digital Cashflow with respect to all remaining issues. The parties should file an updated Joint Status Report within fourteen (14) days of the Order adopting this Report and Recommendation.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **April 18, 2022.** The Clerk should note the matter for **April 22, 2022**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days

REPORT AND RECOMMENDATION - 15

after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed **eighteen (18) pages**. The failure to timely object may affect the right to appeal.

DATED this 4th day of April, 2022.

BRIAN A. TSUCHIDA
United States Magistrate Judge