1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STUDIO 010 INC d/b/a EQUADOSE,<br><br>    Plaintiff,<br>  v.<br><br>DIGITAL CASHFLOW LLC d/b/a HEAR CLEARLY and/or THE EAR DOCTORS; and CHRISTOPHER ACKERMAN, an individual; and END RACISM LLC, d/b/a HEAR CLEARLY and/or THE EAR DOCTORS,<br><br>    Defendants. | CASE NO. 2:20-cv-01018-DGE<br><br>ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT |

Presently before the Court is Plaintiff's motion for default judgment.  (Dkt. No. 107.) Defendant Christopher Ackerman has filed motions to set aside the default entered against him (Dkt. No. 110) and a motion to dismiss Plaintiff's complaint for failure to prosecute.  (Dkt. No. 111.)   For the reasons discussed below Plaintiff's motion for default judgment is GRANTED in part and DENIED in part.  Defendant Ackerman's motions to dismiss Plaintiff's complaint and set aside the default are DENIED.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On April 25, 2022, the Court entered default against defendant Digital Cashflow, LLC. (Dkt. No. 80.)  On August 17, 2022, the Court entered default against defendants End Racism LLC and Christopher Ackerman.  (Dkt. No. 104.)  As of August 17, 2022, all defendants in this case were in default.

Over the next nine months, none of the parties took any action in this case.  Plaintiff did not file a motion for default judgment or take any other steps to move the case forward.  None of the defendants moved to set aside the defaults entered against them.  On May 17, 2023, the Court ordered Plaintiff to show cause, no later than May 31, 2023, why this case should not be dismissed for failure to prosecute under Federal Rule of Civil Procedure 41(b).  (Dkt. No. 105.)

On May 31, 2023, Plaintiff responded to the Court's order to show cause.  (Dkt. No. 106.)  Plaintiff did not offer any explanation for its failure to prosecute this case for nine months, but argued the delay, while inconvenient, was not sufficiently serious, persistent or prejudicial to defendants to warrant dismissal.  (*Id*.)  The same day, Plaintiff filed a motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b).  (Dkt. No. 107.)

On June 2, 2023, Defendant Christopher Ackerman filed a motion asking the Court to set aside the default against him.  (Dkt. No. 110.)  Ackerman claims that during much of 2022, he was involved in emotionally taxing divorce and child custody proceedings that made it difficult for him to attend hearings or otherwise engage in this case.  (*Id*.) Ackerman stated he has meritorious defenses to Plaintiff's claims which he would like to present in court.  (*Id*.)  The same day, Ackerman filed a motion to dismiss Plaintiff's complaint for failure to prosecute. (Dkt. No. 111.)

1

## II.   DISCUSSION

2

### A.  Jurisdiction

3      As a preliminary step, the Court must determine whether it has both subject matter and

4  personal jurisdiction over the parties.  *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When

5  entry of judgment is sought against a party who has failed to plead or otherwise defend, a district

6  court has an affirmative duty to look into its jurisdiction over both the subject matter and the

7  parties.").

8      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case

9  is a civil action arising under the laws of the United States.  The Court also has subject matter

10  jurisdiction under 28 U.S.C. § 1338 for those claims relating to patents, trademarks, and claims

11  of unfair competition when joined with a substantial and related claim under the patent and

12  trademark laws.  The Court has supplemental jurisdiction over Plaintiff's state law claims

13  because those claims are "so related" to the patent and trademark claims as to "form part of the

14  same case or controversy."  28 U.S.C. § 1367(a).

15      When there is no applicable federal statute governing personal jurisdiction, a court's

16  personal jurisdiction analysis begins with the "long-arm" statute of the state in which the court

17  sits.  *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th

18  Cir. 2002).  Washington's long-arm statute "is coextensive with federal due process

19  requirements."  *Padded Spaces LLC v. Weiss*, Case No. C21-0751-JLR, 2022 WL 2905887 at *2

20  (W.D. Wash. July 22, 2022).  The Court must consider "whether the requirements of due process

21  are satisfied by [its] exercise of personal jurisdiction over" Defendants.  *Panavision Int'l v.*

22  *Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).

23

24

The Ninth Circuit uses a three part test to determine whether non-resident defendants are subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987).

Based on these factors, the Court finds its exercise of personal jurisdiction over Defendants is proper.  First, Plaintiff has alleged Defendants "transacted and conducted business in this judicial district, purposefully availing themselves of the benefits and laws of this judicial district and purposefully directing significant and substantive contacts at this judicial district" by selling its products in Washington (through the Amazon.com website) to customers and potential customers who reside in Washington.  (Dkt. No. 57 at 5.)  Second, Plaintiff's claims arise from Defendants conduct directed towards Washington.  Third, there is no evidence that an exercise of jurisdiction would be unreasonable in this case.

**B.  Defendant Ackerman's Motion to Set Aside Default (Dkt. No. 110)**

Under Federal Rule of Civil Procedure 55(c), the Court may set aside an entry of default for good cause.  To determine whether "good cause" exists for setting aside a default, the Court must consider: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the

default judgment would prejudice the other party.  *Franchise Holding II, LLC. v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 925–926 (9th Cir. 2004).  These factors are disjunctive, and the district court may deny the motion to set aside the default if any of the three factors is true.  *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1108 (9th Cir. 2000).

With respect to the first factor, the Court will consider a party's conduct culpable if it "has received actual or constructive notice of the filing of the action and intentionally failed to answer."  *U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1092 (9th Cir. 2010).  In this context, "intentionally" means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an "intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process."  *Id.*

Defendant Ackerman engaged in conduct that led to the default.  However, the record is unclear as to whether Ackerman acted in bad faith.  As the Court found in its order granting Plaintiff's motion for default, Ackerman's selective participation in this case led to the Court's finding of default.  (Dkt. No. 104.)  Since April 2022, Ackerman has conferred with Plaintiff in preparing a Joint Status Report and filing an answer.  However, the parties were unable to submit a Joint Status Report in part because Mr. Ackerman did not provide feedback on a draft.  Ackerman failed to appear at a hearing scheduled for June 28, 2022 despite receiving notice of the hearing and reminder emails just after the start of the hearing.  (Dkt. No. 94.)  Ackerman did not respond to Plaintiff's motion for default.

In explaining his failure to fully participate in this case, Ackerman has cited personal difficulties.  On June 3, 2022, Ackerman filed a motion for an extension of time to file an answer, citing unspecified personal problems.  (Dkt. No. 89.)  On June 14, 2022, the Court denied Ackerman's motion. (Dkt. No. 90.)  Ackerman has provided additional information concerning his personal situation, stating he was going through a difficult divorce and child custody battle for much of 2022.  (Dkt. No. 110.)

As for the second factor, all that is necessary to satisfy the "meritorious defense" requirement is to allege sufficient facts that, if true, would constitute a defense: "the question whether the factual allegation [i]s true" is not to be determined by the court when it decides the motion to set aside the default.  *Signed Personal Check No. 730*, 615 F.3d at 1094, quoting *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 700 (9th Cir. 2001).  Despite this low bar, Ackerman has not presented a meritorious defense in his motion to set aside the default. Ackerman asserts he has meritorious defenses to Plaintiff's claims, but does not identify those defenses in his motion or provide facts to support them.  A "mere general denial without facts to support it" is not enough to justify vacating a default.  *Franchise Holding*, 375 F.3d at 926.

With respect to the third factor, to be prejudicial, the setting aside of a judgment "must result in greater harm than simply delaying resolution of the case."  *TCI Group*, 244 F.3d at 701. In its reply to Defendant's motion, Plaintiff does not identify any additional prejudice that would result from setting aside the default.

The Court finds the second factor weighs in favor of denying Defendant's motion to set aside the default.  However, the Ninth Circuit's rules for determining when a default should be set aside "are solicitous towards movants, especially those whose actions leading to the default

1  were taken without the benefit of legal representation." *Signed Personal Check No. 730*, 615

2  F.3d at 1089.

3        Here, the Court acknowledges that Defendant Ackerman is proceeding pro se, and has

4  been doing so since March 26, 2021, when the Court granted motions to withdraw filed by

5  Ackerman's attorneys.  (Dkt. Nos. 40, 42, 53.)  The Court also acknowledges that during the

6  period preceding the Court's entry of default, Ackerman was experiencing significant personal

7  challenges.[1]  However, Defendant's lack of representation and personal difficulties do not fully

8  explain why he failed to file this motion between August 2022 and June 2023.

9        Accordingly, Defendant's motion to set aside the entry of default is DENIED.

10       **C.  Defendant Ackerman's Motion to Dismiss Plaintiff's Complaint (Dkt. No. 111)[2]**

11        Rule 41(b) of the Federal Rules of Civil Procedure provides that a case may be

12  involuntarily dismissed if a plaintiff "fails to prosecute or to comply with these rules or a court

13  order."  In considering whether to involuntarily dismiss a case pursuant to Rule 41(b) the district

14  court must consider: (1) the public's interest in expeditious resolution of litigation; (2) the court's

15  need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy

16  favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives.

17  *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 890 (9th Cir. 2019) (internal citations

18  and quotations omitted).

19

20

21

22  [1] Plaintiff asks the Court to strike Defendant Ackerman's motion and the exhibits attached to it. (Dkt. No. 112.)  The Court prefers to resolve this motion on the merits.

23  [2] Plaintiff asks the Court to strike certain statements contained in Defendant Ackerman's motion. (Dkt. No. 113.)  The Court will not consider the portions of Defendant's motion cited by Plaintiff, and therefore declines to strike them.

24

1    With respect to the first factor, "[t]he public's interest in expeditious resolution of

2    litigation always favors dismissal." *Yourish v. California Amplifier*, 191 F. 3d 983, 990 (9th Cir.

3    1999).

4    As for the second factor, "[t]he trial judge is in the best position to determine whether the

5    delay in a particular case interferes with docket management and the public interest." *Pagtalunan*

6    *v. Galaza*, 291 F. 3d 639 (9th Cir. 2002).  This case has been pending for more than three years.

7    The Court did not specify a deadline for Plaintiff to file a motion for default judgment, and

8    neither the local rules nor the federal rules specify a deadline.  Nor did the Court set a trial date

9    or other pre-trial deadlines.

10    Nevertheless, Plaintiff's failure to engage in this case during the period between August

11    2022 and May 2023 is arguably even less excusable than Defendant's.  Plaintiff has had the

12    benefit of representation since the Court entered default against Ackerman, and Plaintiff has

13    failed to adequately explain why it did not file a motion for default judgment until the Court

14    issued its order to show cause.[3]  The delay of nine months is significant, and may have been

15    longer if the Court had not intervened.  Unexplained delays of this kind interfere with the Court's

16    ability to manage its docket and the public's interest in expeditious resolution of litigation.

17    Accordingly, this factor weighs in favor of dismissal.

18    As for the third factor, a rebuttable presumption of prejudice to a defendant arises when a

19    party unreasonably delays prosecution of an action.  *In re Eisen*, 31 F.3d 1447, 1452–1453 (9th

20    Cir. 1994).  However, Ackerman did not file a motion to set aside the default until after Plaintiff

21    responded to the Court's order to show cause.  Also, none of the other defendants have filed

22

23    _____

[3] Plaintiff's counsel appears to attribute this delay to unspecified personal and family issues.
24    (Dkt. No. 108.)  However, two attorneys have appeared on Plaintiff's behalf.

ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT - 8

1    motions to set aside the defaults against them.  Thus, there is no basis to conclude the Defendants

2    were prejudiced by any delay. This factor weighs against dismissal.

3         Regarding the fourth factor, this weighs against dismissal because public policy favors

4    disposition of cases on their merits.  *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir.

5    1998).  Although the public policy favoring disposition on the merits always weighs against

6    dismissal, this factor "lends little support to a party whose responsibility is to move a case

7    toward disposition on the merits but whose conduct impedes progress in that direction."  *Allen v.*

8    *Bayer Corp. (In re Phenylpropanolamine (PPA) Prods. Liab. Litig.)*, 460 F.3d 1217, 1228 (9th

9    Cir. 2006).  Here, Plaintiff's failure to file a motion for default judgment until prompted by the

10   Court impeded a resolution of this case on the merits.  Nevertheless, because there was no

11   specific deadline for Plaintiff to file its default judgment motion, the Court finds this factor

12   weighs against dismissal.

13        As for the final factor, the Court finds it difficult to identify a less drastic alternative to

14   dismissal.  But under the circumstances presented in this case where the Defendants' own

15   conduct resulted in a default order, the Court concludes this  factor does not weigh for or against

16   dismissal.

17        Having considered the circumstances of this litigation, the Court finds the relevant factors

18   weigh against dismissal for failure to prosecute.  Accordingly, Defendant's motion to dismiss is

19   DENIED.

20        **D.  Plaintiff's Motion for Default Judgment (Dkt. No. 107)**

21        Federal Rule of Civil Procedure 55(b) permits the Court to enter a default judgment

22   against a party after the Clerk of Court has entered the party's default.  Fed. R. Civ. P. 55(b).

23   "[T]he general rule [upon default] is that well-pled allegations in the complaint regarding

24

liability are deemed true." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Allegations related to damages, however, must be supported with evidence. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–918 (9th Cir. 1987); *see also* Fed. R. Civ. P. 55(b)(2)(B). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion, the Court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–1472 (9th Cir. 1986).

Weighing the *Eitel* factors, the Court finds that entry of a default judgment is warranted.

### Factor 1: Possibility of Prejudice to Plaintiff

The first *Eitel* factor, prejudice to the Plaintiff, weighs in favor of Plaintiff. "On a motion for default judgment, 'prejudice' exists where the plaintiff has no 'recourse for recovery' other than default judgment." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (quoting *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal.2003)). Defendants' failure to answer or otherwise prosecute this case hinders Plaintiff's ability to recover and the Court finds a default judgment appears to be Plaintiff's only means for recovery.

### Factors 2 and 3: Merits of Plaintiff's Claims and Sufficiency of Complaint

"In evaluating the second and third factors, the Court considers the merits of the plaintiff's claims and whether the allegations in the complaint are sufficient to state a claim on which the plaintiff may recover." *Johnson v. Peter*, Case No. C21-1602-LK, 2023 WL 22021,

1    at *4 (W.D. Wash. Jan. 3, 2023).  These factors are frequently analyzed together.  *See Curtis*, 33

2    F. Supp. 3d at 1211.

3         Plaintiff's amended complaint alleges claims for: 1) declaratory judgment of invalidity of

4    United States Patent No. 10,525,191 (the "'191 Patent"), 2) declaratory judgment of non-

5    infringement of the '191 patent, 3) tortious interference with existing contract, 4) commercial

6    disparagement, 5) deceit and negligent misrepresentation, 6) unfair competition in violation of

7    the Washington Consumer Protection Act ("CPA"), 7) unfair competition in violation of the

8    Lanham Act, and 8) infringement of a registered United States trademark.[4]  (Dkt. No. 57 at 25–

9    40.)  The Court will address each claim in turn.

10        1.  Declaratory Judgment of Invalidity of the '191 Patent

11        The Declaratory Judgment Act provides that "in a case of actual controversy," a federal

12   court may "declare the rights and other legal relations of any interested party seeking such

13   declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  "The

14   'actual' controversy' requirement ... is rooted in Article III of the Constitution" and extends

15   jurisdiction under the act "only to matters that are Article III cases or controversies." *SanDisk*

16   *Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1378 (Fed. Cir. 2007).

17        "Whether an actual case or controversy exists so that a district court may entertain an

18   action for a declaratory judgment of non-infringement and/or invalidity is governed by Federal

19   Circuit law." *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1377 (Fed. Cir. 2012) (quoting

20   *Medimmune, Inc. v. Genentech, Inc.*, 409 F.3d 1376, 1378 (Fed. Cir. 2005)), *overruled on other*

21   *grounds* by 549 U.S. 118, 127 (2007).  In the patent context, an "actual controversy" for Article

22

23   _____

     [4] The Court has already found that Plaintiff sufficiently stated a claim on all of its causes of action
     to survive Defendant's motion to dismiss, with the exception of Plaintiff's claim of unfair
24   competition under the Lanham Act.  (Dkt. Nos. 79 at 12–13; 80 at 2.)

1   III purposes occurs when a patentee "asserts rights under a patent based on certain identified

2   ongoing or planned activity of another party, and where that party contends that it has the right to

3   engage in the accused activity without license[.]" *SanDisk*, 480 F.3d at 1381.

4          A controversy requires an affirmative act by the patentee to enforce their rights; it is not

5   enough that a party merely "learns of the existence of a patent owned by another or even

6   perceives such a patent to pose a risk of infringement." *Sell Below Cost USA LLC v. Blue Island*

7   *Holding Group (US) Inc.*, Case No. No. 19-CV-6095 (KAM) (RER), 2021 WL 1394284 at *4

8   (E.D.N.Y. Feb. 9, 2021), quoting *Asia Vital Components Co. v. Asetek Danmark A/S*, 837 F.3d

9   1249, 1253 (Fed. Cir. 2016).  However, Article III "does not mandate that the declaratory

10  judgment defendant have threatened litigation or otherwise taken action to enforce its rights

11  before a justiciable controversy can arise." *Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325,

12  1330 (Fed. Cir. 2014).

13         Plaintiff's complaint alleges that an actual controversy exists as to the validity of the '191

14  patent.  (Dkt. No. 57 at 25–27.)  Plaintiff contends Defendants Ackerman and Digital Cashflow

15  submitted a complaint to Amazon.com alleging Plaintiff infringed the '191 patent and that

16  Defendant End Racism, which acquired the Amazon seller account of Digital Cashflow, has not

17  withdrawn that complaint.  (*Id.*)  Plaintiff alleges the '191 patent is invalid due to material prior

18  art and unenforceable due to Defendant Ackerman's inequitable conduct.  (*Id.*)

19         A patent is invalid where the claimed invention "was patented, described in a printed

20  publication, or in public use, on sale, or otherwise available to the public before the effective

21  filing date of the claimed invention", which in this case was June 12, 2019.  35 U.S.C. §

22  102(a)(1).  "Inequitable conduct is an equitable defense to patent infringement that, if proved,

23  bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276,

24

1285 (Fed. Cir. 2011).  "A party alleging that inequitable conduct arises from a failure to disclose prior art must offer clear and convincing proof that the patent applicant failed to disclose material prior art and acted with intent to deceive the PTO."  *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1109 (Fed. Cir. 2003).  "Once the threshold levels of materiality and intent are established, the trial court must weigh materiality and intent to determine whether the equities warrant a conclusion that inequitable conduct occurred."  *Id.* at 1109–1110.

In its complaint, Plaintiff alleges its products "have been sold on Amazon.com since 2017, with its current design on sale since at least as early as May 2018."  (Dkt. No. 57 at 2.) Plaintiff contends the priority date for the '191 patent is June 12, 2019 and that "it is straightforwardly the case that either the '191 Patent is invalidated by Plaintiff's prior art product or Plaintiff's product does not infringe."  (*Id.*)  Plaintiff's complaint further alleges Defendants Ackerman and Digital Cashflow knew of Plaintiff's products "since at least as early as their trademark dispute in 2018, and Defendant End Racism knew of Plaintiff's products and the evidence in this case since prior to the date it acquired Digital Cashflow's assets in December 2020."  (*Id.*)

Plaintiff contends Defendant Ackerman "concealed both Plaintiff's prior art products, and Defendants' own prior art product" from the United States Patent & Trademark Office ("PTO"), violating his obligation to disclose known material prior art in an act of inequitable conduct that renders the '191 Patent unenforceable.  (*Id.* at 2–3.)  Plaintiff asserts Defendant End Racism, "although purportedly an unrelated third-party assignee, was aware of the inequitable conduct and bases for invalidity of the '191 Patent but continues to seek enforcement of the '191 Patent against Plaintiff and other competitors."  (*Id.* at 3.)

1    Taking as true the allegations in Plaintiff's complaint, the Court finds there is an actual

2    controversy concerning the validity of the '191 patent.  Taking as true Plaintiff's allegations,

3    Defendants engaged in inequitable conduct that renders the '191 patent unenforceable.

4    Accordingly, the Court finds the allegations in Plaintiff's complaint are sufficient to state a claim

5    that Plaintiff is entitled to a declaratory judgment as to the invalidity of the '191 patent.[5]

6            2.   <u>Declaratory Judgment of Non-Infringement of the '191 Patent</u>

7    Plaintiff's complaint alleges an actual controversy exists as to whether Plaintiff infringed

8    the '191 patent.  (Dkt. No. 57 at 27–28.)  The complaint alleges Defendants contacted

9    Amazon.com claiming Plaintiff infringed one or more claims of the '191 Patent, causing

10   Amazon.com to delist Plaintiff's product.  (*Id*. at 27.)  Plaintiff denies that its product infringes

11   any claims in the '191 patent.  (*Id*. at 26.)

12           Taking as true the allegations in Plaintiff's complaint, the Court finds there is an actual

13   controversy concerning whether Plaintiff infringed the '191 patent.  Taking as true Plaintiff's

14   contentions, Plaintiff's products do not infringe any claims in the '191 patent.  Accordingly, the

15   Court finds the allegations in Plaintiff's complaint are sufficient to state a claim that Plaintiff is

16   entitled to a declaratory judgment that Plaintiff's products do not infringe the '191 patent.[6]

17           3.   <u>Tortious Interference with Existing Contract</u>

18   Under Washington law, a plaintiff claiming tortious interference with a contractual

19   relationship or business expectancy must prove five elements: 1) the existence of a valid

20   contractual relationship or business expectancy; (2) that defendants had knowledge of that

21

22   [5] In ruling on Defendants' motion to dismiss, the Court found that Plaintiff sufficiently stated a
     claim with respect to the invalidity of the '191 patent.  (Dkt. Nos. 79 at 8–10; 80 at 2.)

23   [6] In ruling on Defendants' motion to dismiss, the Court found that Plaintiff sufficiently stated a

24   claim that Plaintiff's products did not infringe the '191 patent.  (Dkt. Nos. 79 at 10–11; 80 at 2.)

relationship; (3) an intentional interference inducing or causing a breach or termination of the

relationship or expectancy; (4) that defendants interfered for an improper purpose or used

improper means; and (5) resultant damage. *Tacoma Auto Mall, Inc. v. Nissan North America,*

*Inc.*, 279 P.3d 487, 498 (Wash. Ct. App. 2012).

Plaintiff's complaint alleges Defendants Ackerman and Digital Cashflow were aware of

Plaintiff's contractual relationship with Amazon and intentionally interfered with that

relationship by "knowingly and intentionally asserting materially false allegations of intellectual

property infringement against Plaintiff in order to undermine Plaintiff's lawful competition."

(Dkt. No. 57 at 28–29.)  Plaintiff contends this conduct was fraudulent and "directly, proximately

and foreseeably damaged" Plaintiff and its products.  (*Id.* at 29.)

Taking as true the allegations in Plaintiff's complaint, Plaintiff has sufficiently stated a

claim for tortious interference.

### 4.  Commercial Disparagement

"To establish a claim of product disparagement, also known as trade libel, a plaintiff must

allege that the defendant published a knowingly false statement harmful to the interests of

another and intended such publication to harm the plaintiff's pecuniary interests."  *Auvil v. CBS*

*60 Minutes*, 67 F.3d 816, 820 (9th Cir.1995).

Plaintiff's complaint alleges Defendants Ackerman and Digital Cashflow "purposefully,

knowingly, and intentionally published a claim that Plaintiff infringed the '191 Patent to

specifically harm Plaintiff by causing Amazon.com to delist Plaintiff's product from the

Amazon.com marketplace."  (Dkt. No. 57 at 29–30.)  Even if Plaintiff has sufficiently stated a

claim, this Court has previously questioned whether Washington state law recognizes a cause of

1    action for trade libel or product disparagement.  *Zango, Inc. v. PC Tools Pty Ltd.*, 494 F. Supp.

2    2d 1189 (W.D. Wash. 2007).

3         Because the Court questions whether a cause of action for "commercial disparagement"

4    exists under Washington law, Plaintiff has not sufficiently stated a claim with respect to this

5    cause of action.

6         5.   Deceit and Negligent Misrepresentation[7]

7         To prove negligent misrepresentation under Washington law, a party must establish by

8    clear, cogent, and convincing evidence: 1) the defendant supplied information that was false for

9    the guidance of the plaintiff in a business transaction; 2) the defendant knew or should have

10   known that the information was for the purpose of guiding the plaintiff in a business transaction;

11   3) the defendant was negligent in obtaining or communicating the false information; 4) the

12   plaintiff relied on the information; 5) the plaintiff's reliance was reasonable; and 6) the false

13   information proximately caused the plaintiff damages.  *Dewar v. Smith*, 342 P.3d 328, 336

14   (Wash. Ct. App. 2015).

15        Plaintiff's complaint alleges Defendants Ackerman and Digital Cashflow falsely stated to

16   Amazon that Plaintiff's products infringed the '191 and that defendants knew or should have

17   known that this statement was false.  (Dkt. No. 57 at 30.)  Plaintiff's complaint alleges

18   Defendants Ackerman and Digital Cashflow "acted intentionally and with a specific and

19   purposeful intent to cause harm to Plaintiff and to induce Amazon.com to rely on the materially

20   false statements to delist Plaintiff's product from Amazon's marketplace."  (*Id.*)

21

22

23   _____

     [7] The Court is not familiar with a claim for "deceit and negligent misrepresentation."  Accordingly,
24   the Court considers this claim to be a claim for negligent misrepresentation.

1    Because the tort of negligent misrepresentation requires the allegedly false information to

2    be for the purpose of "guiding the plaintiff in a business transaction" and further requires

3    Plaintiff to rely on this information and for that reliance to be reasonable, Defendants' statements

4    to Amazon.com concerning Plaintiff's alleged infringement of the '191 patent do not appear to

5    satisfy the elements of the tort.  Plaintiff has not plead that the tort can apply to third parties like

6    Amazon.com under these circumstances.  Accordingly, Plaintiff has not stated a claim for

7    negligent misrepresentation.

8         6.   <u>Unfair Competition in Violation of the Washington CPA</u>

9         The Washington CPA makes unlawful "[u]nfair methods of competition and unfair or

10   deceptive acts or practices in the conduct of any trade or commerce." Rev. Code Wash.

11   19.86.020.  "To prevail in a private CPA claim, the plaintiff must prove 1) an unfair or deceptive

12   act or practice, 2) occurring in trade or commerce, 3) affecting the public interest, 4) injury to a

13   person's business or property, and 5) causation."  *Panag v. Farmers Ins. Co. of Wash*., 204 P.3d

14   885, 889 (Wash. 2009).

15        In ruling on Defendant Ackerman's motion to dismiss, the Court has already found that

16   Plaintiff sufficiently alleged a claim for unfair competition under the Washington CPA.  (Dkt.

17   Nos. 79 at 11–12; 80 at 2.)

18        7.   <u>Unfair Competition in Violation of the Lanham Act</u>

19        Plaintiff's complaint alleges Defendants Ackerman and Digital Cashflow engaged in

20   unfair competition in violation of Section 43(a) of the Lanham Act.  (Dkt. No. 57 at 31–32.)  The

21   Court previously granted Defendant Ackerman's motion to dismiss with respect to this claim.

22   (Dkt. Nos. 79 at 12–13, 80.)  The Court found that Plaintiff's allegations that Defendant

23   Ackerman made false infringement complaints to Amazon were insufficient to support a false

24

advertising claim because these complaints were not "commercial advertising or promotion" within the meaning of the Lanham Act.  (*Id.*)

Accordingly, Plaintiff has not stated a claim with respect to unfair competition under the Lanham Act with respect to any of the defendants.

8.   Infringement of a Registered United States Trademark

To establish a trademark infringement claim under 15 U.S.C. § 1114, Plaintiff must show that Defendants used: 1) a reproduction, counterfeit, copy or colorable imitation of plaintiff's registered trademark, 2) without its consent, 3) in commerce, 4) in connection with the sale, offering for sale, distribution or advertising of any goods, 5) where such use is likely to cause confusion, or to cause a mistake or to deceive.  *Amazon.com v. Kurth*, Case No. 2:18-CV-00353-RAJ, 2019 WL 3426064, at *2 (W.D. Wash. July 30, 2019) (citing 15 U.S.C. § 1114(a)).

To establish a trademark infringement claim under 15 U.S.C. § 1125(a) a plaintiff must prove: 1) it has a valid, protectable trademark, and 2) the defendant's use of the mark is likely to cause confusion.  *Southern California Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014), quoting *Applied Info. Sciences Corp. v. eBAY, Inc*., 511 F.3d 966, 969 (9th Cir.2007)

Plaintiff contends Defendants Ackerman, Digital Cashflow, and End Racism sold products using the mark "Hear Clearly", which is confusingly similar to Plaintiff's "HEAR®" registered trademark.  (Dkt. No. 57 at 32–40.)  Plaintiff has sufficiently stated a claim for trademark infringement under 15 U.S.C. § 1114(1)(a) and § 1125(a)(1).

Factor 4: The Sum of Money at Stake

The fourth *Eitel* factor "considers whether the amount of money requested is proportional to the harm caused."  *Sun Life Assurance Co. of Canada v. Est. of Wheeler*, Case No. C19-0364-JLR, 2020 WL 433352, at *4 (W.D. Wash. Jan. 28, 2020).  "If the sum of money at issue is

reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted." *Walters v. Statewide Concrete Barrier, Inc.*, Case No. C-04-2559 JSW MEJ, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006).  "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable."  *Marshall Wealth Mgmt. Grp., Inc. v. Santillo*, Case No. 18-CV-03510-LHK, 2019 WL 79036, at *7 (N.D. Cal. Jan. 2, 2019) (quoting *Trung Giang Corp. v. Twinstar Tea Corp.*, Case No. C 06–03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007)).

In addition to declaratory relief, Plaintiff seeks damages for lost profits of $211,051.00 with respect to its claims for tortious interference, commercial disparagement, deceit/negligent misrepresentation, and unfair competition under the Lanham Act.  (Dkt. No. 107 at 31.)  With respect to Plaintiff's claim for unfair competition under the CPA, Plaintiff seeks treble damages for willfulness, for a total of $633,153.00.  (*Id*.)  Plaintiff seeks Defendants' profits with respect to its trademark claims in the amount of  $89,505.00, trebled to $268,515.00 due to willfulness. (*Id*.)  Plaintiff also seeks attorney fees and costs.  (*Id*. at 32.)

In support of its request, Plaintiff offers a declaration from Studio 010 owner and CEO Tyson Triplett.  (Dkt. No. 109.)  Triplett claims he extracted information concerning sales, lost sales, costs and profits from Studio 010's Amazon.com sales database and vendor invoices.  (*Id*. at 2.)  Triplett's declaration includes sales and net profit figures for the period between January 2020 and December 2021.  (*Id*. at 4–5.)

Triplett states that Studio 010's average daily profit for the period between March 1, 2020, through June 10, 2020, was $2351.86 per day, calculated by dividing the total profit for that period ($239,890.00) by the total number of days (102).  (*Id*. at 6.)  Triplett argues it is appropriate to use the March through June timeframe because January and February were

"startup months" rather than typical sales months.  (*Id*.)  Triplett calculates lost profits for the 39 days when Amazon.com de-listed Plaintiff's products as a result of Defendant's infringement complaint at $91,689.00.  (*Id*.)  Triplett contends that if average daily profits for the March 1, 2020, through June 10, 2020 timeframe continued, total profits for the August 1, 2020 through February 28, 2021 period would have been $470,200.00.  (*Id*. at 6–7.)  Triplett states the difference between this figure and Studio 010's actual profits during the latter period was $119,362.  (*Id*. at 7.)  Triplett calculates Studio 010's total lost profits for the period June 11, 2020, through February 28, 2021 at $211,051.00.  (*Id*.)

In calculating Defendant's profits, Triplett based his estimates on a price of $22.95 per unit, a 20 percent profit margin, and sales of 6,500 units per year.  (*Id*. at 9–10.)  Triplett calculates Defendant's profits at $29,835.00 per year for each year between 2018 and 2021.  (*Id*. at 10.)

The sum of money sought by Plaintiff is significant.  As discussed above, Plaintiff has not stated a claim with respect to commercial disparagement or negligent misrepresentation, and the Court has already dismissed Plaintiff's claim of unfair competition under the Lanham Act. Nevertheless, the Court cannot say the amount requested by Plaintiffs for the outstanding causes of action is per se unreasonable.  The Court finds this factor neither favors nor disfavors an entry of default judgment.

### Factors 5 and 6: The Possibility of a Dispute Concerning Material Facts and Excusable Neglect

The fifth and sixth *Eitel* factors also weigh in favor of entering default judgment.  Here, there is some possibility of a dispute concerning material facts, but the fifth factor nevertheless weighs in favor of default judgment.  With the exception of Defendant Ackerman, none of the defendants have moved to set aside the default or otherwise participated in this case.  Ackerman

claims he has meritorious defenses which he would like to present, but has not provided those defenses.

As for the sixth factor, Defendant Digital Cashflow's default was due to its failure to secure new counsel after its attorneys withdrew from the case.  (Dkt. Nos. 79, 80.)  Defendant End Racism LLC's default was due to its failure to confer with Plaintiff to prepare a Joint Status Report, failure to appear at a scheduling conference and effective abandonment of the case because it was no longer able to pay its attorney.  (Dkt. No. 104.)  Defendant Ackerman claims that during much of 2022, he was proceeding pro se and involved in emotionally taxing divorce and child custody proceedings that made it difficult for him to attend hearings or otherwise engage in this case.  (Dkt. No. 110.)  However, as discussed above, Ackerman's lack of representation and personal difficulties do not fully explain why he failed to file a motion to set aside the default between August 2022 and June 2023.

<u>Factor 7: The Preference for Resolving Disputes on the Merits</u>

The final *Eitel* factor, "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits," weighs against entering a default judgment.

Having weighed the *Eitel* factors, the Court finds that entry of a default judgment is warranted.

**E.  Damages**

At default judgment, the Court accepts as true "the factual allegations of the complaint, except those relating to the amount of damages."  *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir.1977).  Plaintiffs carry the burden to prove the damages pleaded in the complaint and "[t]he court's role is to ensure that the amount of damages is reasonable and is

1  demonstrated by the plaintiff's evidence." *Emp. Painters' Tr. v. Cascade Coatings*, Case No.

2  C12-0101JLR, 2014 WL 2893298, at *4 (W.D. Wash. June 25, 2014).

3         As a preliminary matter, the Court will not award any damages for Plaintiff's causes of

4  action with respect to commercial disparagement, deceit/negligent misrepresentation, or unfair

5  competition under the Lanham Act because Plaintiff has not stated a claim with respect to these

6  causes of action.  In addition, although the Court identifies the damages awardable under each

7  individual cause of action, Plaintiff does not provide authority allowing for an award of

8  duplicative damages.  To the extent Plaintiff seeks its lost profits under more than one cause of

9  action, the Court will only award Plaintiff its lost profits once.

10                    Tortious Interference

11        Plaintiff seeks lost profits of $211,051.00 with respect to its claims for tortious

12 interference.  (Dkt. No. 107 at 31.)  The Court finds this amount of damages is awardable under

13 this cause of action based on Triplett's declaration and the evidence presented.

14              Unfair Competition in Violation of the Washington CPA

15        With respect to Plaintiff's claim for unfair competition under the CPA, Plaintiff seeks

16 treble damages for willfulness, for a total of $633,153.00.  (*Id.*)  Washington Revised Code §

17 19.86.090 authorizes an award of treble damages for CPA violations, provided that "such

18 increased damages award for violation of RCW 19.86.020 [prohibiting unfair or deceptive acts

19 or practices in the conduct of trade or commerce] may not exceed twenty-five thousand dollars."

20        Accordingly, the maximum Plaintiff can recover with respect to this cause of action is the

21 amount sought, $211,051.00 in lost profits, plus an additional $25,000.00 as treble damages.

22 The Court finds an award in this amount is warranted based on the evidence presented.

23 However, lost profits will not be awarded more than once.

24

1

<u>Trademark Infringement</u>

2       Plaintiff seeks Defendants' profits with respect to its trademark claims in the amount of

3   $89,505.00, trebled to $268,515.00 due to willfulness.  (Dkt. No. 107 at 31.)

4       The Lanham Act provides that, subject to the principles of equity, a trademark owner

5   may "recover (1) defendant's profits, (2) any damages sustained by plaintiff, and (3) the costs of

6   the action." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012),

7   citing 15 U.S.C. § 1117(a).  "Additionally, the Court may enter judgment for any sum up to three

8   times the amount found as actual damages."  *Id.*

9       However, "recovery of both plaintiff's lost profits *and* disgorgement of defendant's profits

10  is generally considered a double recovery under the Lanham Act."  *Nintendo of Am., Inc. v.*

11  *Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir.1994) (emphasis in original).  Because Plaintiff

12  will be awarded its lost profits, the Court concludes it is not equitable to also award

13  disgorgement of Defendants' profits or treble damages.

14      **F.  Attorney Fees**

15      In patent cases, a court may award reasonable attorney fees to the prevailing party in

16  "exceptional cases."  35 U.S.C. § 285.  An exceptional case is "simply one that stands out from

17  others with respect to the substantive strength of a party's litigating position (considering both

18  the governing law and the facts of the case) or the unreasonable manner in which the case was

19  litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

20  District courts may determine whether a case is "exceptional" in the case-by-case exercise of

21  their discretion, considering the totality of the circumstances.  *Id.*

22      In general, exceptional cases under this standard are "rare."  *Id.* at 555.  "No specific

23  evidentiary burden" applies to a motion seeking fees, and the "decision whether or not to award

24

1   fees is still committed to the discretion of the trial judge, and even an exceptional case does not

2   require in all circumstances the award of attorney fees." *Id*. at 557; *see also Modine Mfg. Co. v.*

3   *Allen Group, Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990).

4         An award of reasonable attorneys' fees and costs is also expressly provided for in

5   "exceptional" cases of trademark infringement.  15 U.S.C. § 1117(a).  "While the term

6   'exceptional' is not defined in the statute, attorneys' fees are available in infringement cases

7   where the acts of infringement can be characterized as malicious, fraudulent, deliberate, or

8   willful."  *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (quoting

9   *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002)).  The Ninth Circuit

10  has upheld awards of attorneys' fees under 15 U.S.C. § 1117(a) "solely because, by entry of

11  default judgment, the district court determined, as alleged in [plaintiff's] complaint, that

12  [defendant's] acts were committed knowingly, maliciously, and oppressively, and with an intent

13  to ... injure [plaintiff]."  *Id*.

14        Plaintiff contends this constitutes an "exceptional case" because Defendants' litigation

15  tactics "refused to comply with their discovery obligations, failed to appear for scheduled

16  hearings, and eventually just stopped responding, forcing Plaintiff to seek a default through the

17  Court." (Dkt. No. 107 at 31.)  For the reasons discussed above, the Court concurs.  Defendants'

18  dilatory conduct has made resolution of this case more difficult and constitutes an exceptional

19  case justifying an award of attorney fees.

20

21

22

23

24

### III.   ORDER

1) Plaintiff's motion for default judgment (Dkt. No. 107) is GRANTED in part and DENIED in part.  Plaintiff's motion is DENIED with respect to the following causes of action:

    a.   Commercial Disparagement;

    b.   Negligent Misrepresentation;

    c.   Unfair Competition under the Lanham Act.

2) Plaintiff's motion for default judgment is GRANTED with respect to the following causes of action:

    a.   Declaratory Judgment of Invalidity of the '191 Patent;

    b.   Declaratory Judgment of Non-Infringement of the '191 Patent;

    c.   Tortious Interference with Existing Contract;

    d.   Unfair Competition in Violation of the Washington CPA;

    e.   Infringement of a Registered United States Trademark.

3) The Court awards Plaintiff damages in the form of lost profits based on each cause of action for which the Court found in Plaintiff's favor.  However, Plaintiff has presented no authority that the Court can award duplicative damages.

4) Accordingly, the Court awards Plaintiff $211,051.00 in lost profits, plus an additional $25,000.00 as treble damages under the Washington CPA, for a total of **$236,051.00**.

5) The Court finds an award of attorney fees is warranted pursuant to 35 U.S.C. § 285.  Plaintiff shall file a motion for attorney fees within fourteen (14) days of this order.

6)  Defendant Ackerman's motions to dismiss Plaintiff's complaint (Dkt. No 111)

and set aside the default (Dkt. No. 110) are DENIED.

Dated this 13th day of October, 2023.

David G. Estudillo
United States District Judge